# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| | : |
| In re | : Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | : Case No. 22-11069 (JTD) |
|     Debtors. | : (Jointly Administered) |
| | : |
| | : |
| FTX RECOVERY TRUST, | : |
|     Plaintiff, | : |
|             -against- | : |
| RYAN SALAME, | : Adv. Pro. No. 24-50186 (JTD) |
|     Defendant. | : |
| | : Related to Adv. D.I. 2, 42 |
| | : |
| | : |

## OPENING BRIEF IN SUPPORT OF MICHELLE BOND'S APPLICATION TO INTERVENE IN ADVERSARY PROCEEDING FOR LIMITED PURPOSES

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases (collectively, the "Debtors"), a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX

**Table of Contents**

FACTUAL BACKGROUND ..................................................................................1

ARGUMENT .....................................................................................................6

I.      **Bond Should be Permitted to Intervene as of Right Because She is a Party in Interest and Because She Has an Interest in the Property and Transactions that are at Issue in this Litigation.** ...............................................6

        A.      **This Motion to Intervene is Timely.** ...................................... 7

        B.      **Ms. Bond can intervene under Rule 24(a)(1) because 11 U.S.C. § 1109(b) provides her an unconditional statutory right to intervene.** ............... 8

        C.      **Ms. Bond can intervene under Rule 24(a)(2) because she has an interest in property that is the subject of this litigation.** ................................ 10

                1.      *Ms. Bond's interests are impaired and are at risk in this litigation.* ........ 10

                2.      *Ms. Bond's interests are no longer adequately represented by a party to this action.* ................................. 11

II.     **Ms. Bond Should Be Permitted to Intervene Under Rule 24(b) permitting permissive joinder.** ........................................................11

CONCLUSION .................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Bell-Breslin*, 283 B.R. 834 (Bankr. D. Md. 2002) ....................................................9

*In re Glob. Indus. Techs., Inc.*, 645 F.3d 201 (3d Cir. 2011)...........................................8

*In re Money Ctr. of Am., Inc.*, 544 B.R. 107 (Bankr. D. Del. 2016)...................... 6-8, 11

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361 (3d Cir. 1995) ........................................................................................................................7, 10

*Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228 (3d Cir. 1994) ...........................8

*Turn Key Gaming, Inc. v. Oglala Sioux Tribe,* 164 F.3d 1080 (8th Cir.1999) ..............6

*United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006)...................................................9

*United States v. Rankin*, 779 F.2d 956 (3d Cir. 1986) ...................................................9

**Constitutions**

U.S. Const., amend. VI........................................................................................................9

**Statutes**

11 U.S.C. § 1109(b) ...........................................................................................................8

**Rules**

Fed. R. Bankr. P. 7024......................................................................................................1, 6

Fed. R. Civ. P. 24 ................................................................................................ 1, 6, 8, 10-11

Michelle Bond respectfully moves this honorable Court to intervene in the above-
captioned adversary proceeding ("Adversary Proceeding") pursuant to Federal Rule of
Bankruptcy Procedure 7024 and Federal Rule of Civil Procedure 24 for the limited purpose of:
(1) moving for a revised briefing schedule to allow additional time to respond to the pending
*Motion for a Preliminary Injunction and Expedited Discovery* (Adv. D.I. 2) filed by the Debtors
(the "PI Motion"), (2) permitting Ms. Bond to interpose a response to the PI Motion to protect
her rights should the defendant, Ryan Salame ("Defendant" or "Mr. Salame"), be unable to do
so, and (3) potentially moving for relief from the current Temporary Restraining Order entered
on December 17, 2024 (Adv. D.I. 26) (the "TRO") should such a need arise.  Attached to this
memorandum is Ms. Bond's proposed brief in support of this application.  In support of this
motion to intervene, Ms. Bond also relies on the accompanying Declaration of Michelle Bond
("Bond Decl.") and the Declaration of Eric R. Breslin ("Breslin Decl.").  Debtors do not object to
this Motion although they reserve all rights on substantive issues.

## FACTUAL BACKGROUND

1.     Ms. Bond is Mr. Salame's wife.  She and Mr. Salame married on September 28,
2024.  ("Bond Decl."), ¶ 1).  They have been together since about October 2021, but their
wedding was delayed while Ms. Bond attempted to extricate herself from an abusive husband in
a protracted and contentious divorce.  (*Id.*).  Ms. Bond and Mr. Salame moved in together in
early 2022.  (*Id.*).  Since that time, they have maintained a joint household.  (*Id.*).  Mr. Salame
and Ms. Bond have a son together and Ms. Bond has two other minor children from her previous
marriage.  (*Id.*).

2.     On May 29, 2024, Mr. Salame pled guilty to one count of operating an unlicensed
money transfer business and one count of campaign finance violations.  (Breslin Decl., Ex. B).

He received over seven years' incarceration.  (*Id.*).  Mr. Salame reported to FCI Cumberland to begin serving his sentence on October 11, 2024.[2]  (Bond Decl., ¶ X).   Prior to November 2024, Mayer Brown represented Mr. Salame in connection with negotiations with the Debtors.  (*Id.* at ¶ 2).

3.     The United States Attorneys' Office for the Southern District of New York unsealed an indictment against Ms. Bond on August 19, 2024.  (Redacted Indictment, *United States v. Bond*, No. 24-cr-494-GBD, D.I. No. 2 (S.D.N.Y.)).  The government alleges that Ms. Bond violated campaign finance laws during her primary campaign for a seat in the United States House of Representatives in 2022.  (*See id.*).  Ms. Bond denies all allegations in the indictment.  In August 2024, Ms. Bond retained Duane Morris LLP to represent her in her criminal case.

4.     The Debtors' initiated this Adversary Proceeding on November 4, 2024 (Adv. D.I. 1) and filed the PI Motion.[3]  On December 17, 2024, the Debtors filed a Motion for a Temporary Restraining Order, relying on their brief in support of the PI Motion.  (Adv. D.I. 20) ("TRO Motion").  In their brief in support of the PI Motion, the Debtors represented that there was no "meaningful harm to any other interested party." (Adv. D.I. 3 at p. 39, ¶ 93).  The Debtors neglected to advise the Court that Ms. Bond has an interest in Mr. Salame's assets and that, by granting both the TRO Motion and the PI Motion, the Debtors would effectively freeze non-party Ms. Bond's assets.  Mr. Salame retained new counsel, Montgomery, McCracken,

---

[2] The Debtors' make many representations and characterizations in their filings about and concerning Ms. Bond that she believes are both inaccurate and unfair.  Those claims are not addressed here unless relevant.  Ms. Bond reserves all her rights and arguments.

[3] On February 12, 2025, FTX Recovery Trust ("Plaintiff") replaced the Debtors as the named plaintiff in the Adversary Proceeding.  Adv. D.I. 70.  For sake of consistency and ease of reference, "Debtors" refers to both the "Debtors" and the "Plaintiffs."

Walker & Rhoads LLP ("MMWR") to represent him in the Adversary Proceeding.[4]  MMWR requested and the Debtors stipulated to an extension to January 31, 2025 to answer the adversary complaint and to respond to the PI Motion.  (Adv. D.I. 16).

5.      On December 17, 2024, the Debtors secured the TRO, thereby freezing Mr. Salame's assets and permitting the Debtors to serve expedited discovery.  (Adv. D.I. ECF 26).

6.      The Debtors served twenty-eight subpoenas, including subpoenas to Ms. Bond's criminal counsel, Duane Morris LLP, and to Ms. Bond.  (Breslin Decl., Ex. C).  The subpoena directed to Duane Morris demanded a wide range of information, including information that infringed on the attorney client privilege.  (*See id.*).  Consequently, Duane Morris objected on privilege grounds, as well as concerns as to the scope of the demands and the lack of a sufficiently robust confidentiality order.  (*Id.* at Ex. D).  Duane Morris also objected on the grounds that there was an imminent agreement between the Debtors and Mr. Salame concerning the TRO asset freeze on the instruction of MMWR.  (*Id.*).

7.      Ms. Bond also submitted a substantive and fulsome response to the subpoena directed to her within fourteen days.  She also interposed objections based on her privileges, the scope and relevance of the demands, the burden imposed, and the intrusion on Mr. Salame's privileges.  (*Id.* at Ex. E).  The Debtors sought to meet and confer on these objections on January 31, 2025.  (*Id.* at Ex. F).

8.      On or about January 10, 2025, counsel to the Debtors sent letters to all known counsel for Ms. Bond and Mr. Salame advising that all retainers received by the law firms were subject to the TRO and would be drawn down at the firm's own risk.  (Breslin Decl., Ex. G).

---

[4] On November 15, 2024, MMWR also sent an engagement letter to Ms. Bond for representation with respect the Adversary Proceeding. (Bond Decl., Ex. A.)

3

9.      On January 22, 2025, the Debtors filed a Motion to Enforce the Temporary
Restraining Order.  (Adv. D.I. 42).  On January 23, 2025, Duane Morris asked MMWR that
communications with Ms. Bond be through criminal counsel at Duane Morris LLP.  (Breslin
Decl., ¶ 9).  Immediately thereafter, also on January 23, MMWR emailed Mr. Salame on
Corrlinks (a service that allows inmates to send *monitored* emails) and requested Mr. Salame's
permission to withdraw from the case.  (Adv. D.I. 48, ¶ 7).  On January 24, 2025, MMWR filed a
motion to withdraw as counsel for Mr. Salame (the "MMWR Motion to Withdraw").  (Adv. D.I.
48).

10.      Following the January 24, 2025 MMWR Motion to Withdraw, MMWR did
communicate with Ms. Bond through Duane Morris LLP and has been communicating directly
with Mr. Salame.  (Bond Decl., at ¶5).

11.      On January 24, 2025, MMWR also moved to stay the Adversary Proceeding until
Mr. Salame could find new counsel (the "Motion to Stay Proceedings").  (Adv. D.I. 49).  The
Debtors opposed the application.  (Adv. D.I. 52).  On January 29, 2025, the Court held a status
conference with the parties regarding the MMWR Motion to Withdraw and the Motion to Stay
Proceedings.  (Adv. D.I. 56).  For the Court's convenience, a machine transcription of that
hearing is attached as Exhibit F to the Breslin Declaration.  The Court carried the motion until
February 26, 2025.   The Court ordered that MMWR must remain as counsel to Mr. Salame
until that date and ordered that MMWR be prepared to file "what needs to be filed on [January
31, 2025]."  (Breslin Decl., Ex. H, p. 5).

12.      On January 31, 2025, MMWR filed an answer to the adversary complaint on
behalf of Mr. Salame.  (Adv. D.I. 57).  MMWR did not file a substantive opposition or response
to the PI Motion.  Instead, MMWR filed a one-page document stating that MMWR "is not in a

4

position to oppose or consent to the [PI] Motion on Defendant's behalf," again claiming that they

have been forbidden to speak with Ms. Bond except through counsel at Duane Morris LLP and

hence Mr. Salame. (Adv. D.I. 58).  It is worth noting that Duane Morris LLP has facilitated

communications through Ms. Bond since January 23, 2025.  Further, privileged communication

with incarcerated clients is possible and routine, although telephone calls require advanced

notice to the prison.  (*See* Breslin Decl., Ex. I (FCI Cumberland rules regarding attorney

telephone calls)).

13.     Concerned at the state of Mr. Salame's defense, on January 31, 2025, Ms. Bond's

counsel filed a *Request for Extension of Time and Response of Michelle Bond to the PI Motion*

(Adv. D.I. 59) ("Bond's Preliminary Response and Request").

14.     On February 4, 2025, the Debtors filed an opposition to Bond's Preliminary

Response and Request (Adv. D.I. 64).  The Debtors argued, among other arguments, that Ms.

Bond could not seek relief because she is not a party to the Adversary Proceeding.  (Adv. D.I.

64, ¶ 2.).   Ms. Bond believed it was important to get something on the docket as quickly as

possible.  She now submits this motion to intervene and respectfully requests the Court consider

that filing in connection with this motion to intervene.

15.     On February 5, 2025, the Debtors requested that the Court grant the PI Motion

"[b]ecause Salame did not oppose the PI Motion." (Adv. D.I. 67, p. 3).  In short, Mr. Salame,

incarcerated at FCI Cumberland is now potentially prejudiced by his counsel's failure to respond

to the PI Motion.  Ms. Bond, who believed her interests were being protected by her husband

through his defense and MMWR, with whom she has an active engagement letter, is left

defenseless.  She is confined to what money she can earn as a single mother with a high-profile

indictment hanging over her head to fund her criminal defense, care for her three children, and

maintain the family home.  Unlike most people in financial crisis, Ms. Bond has no ability to access the value of her home to assist with expenses without running the risk of violating the TRO.

16.     Ms. Bond thus moves this Court to intervene in the Adversary Proceeding for the very limited purposes stated above.

## ARGUMENT

17.     Ms. Bond should be permitted to intervene in the Adversary Proceeding under both mandatory and permissive joinder principles.  Federal Rule of Civil Procedure 24 governs motions to intervene in an adversary proceeding.  Fed. Bankr. R. 7024.  Rule 24(a) provides for mandatory joinder and Rule 24(b) allows for permissive joinder.  In evaluating a motion to intervene, the Court should evaluate the rights at stake and not the ultimate merits of the claim the intervenor seeks to assert unless the allegations are frivolous on their face. *Turn Key Gaming, Inc. v. Oglala Sioux Tribe,* 164 F.3d 1080, 1081 (8th Cir. 1999).

**I.      Bond Should be Permitted to Intervene as of Right Because She is a Party in Interest and Because She Has an Interest in the Property and Transactions that are at Issue in this Litigation.**

18.     Rule 24(a) permits a party to intervene as of right on a timely motion where she: (1) "is given an unconditional right to intervene by federal statute, or (2) claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a); *In re Money Ctr. of Am., Inc.*, 544 B.R. 107, 111 (Bankr. D. Del. 2016).

6

**A.    This Motion to Intervene is Timely.**

19.    Intervention under both 24(a)(1) and (a)(2) require a timely motion.  Three factors govern the Court's analysis of the timeliness of a motion to intervene: (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay. *Mountain Top Condo Ass'n. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995).

20.    First, this matter is at a very early stage of proceedings.  The facts giving rise to this limited motion to intervene did not materialize until January 23, 2025, at the earliest (the day MMWR indicated an intention to move to withdraw), and were not confirmed until January 31, 2025, when MMWR failed to file a substantive opposition to the PI Motion on behalf of its client(s).  The "non-response" to the PI Motion effectively left Mr. Salame, and by extension non-party Ms. Bond, without any representation on an important issue – how and if Ms. Bond could use marital assets to provide for her children, maintain the family home, and pay for her criminal defense in a pending federal indictment.

21.    Even if the Court were to find a delay in moving to intervene, "[t]he mere passage of time [] does not render an application untimely." *Id.*  Rather the "critical inquiry" is whether there have been any "proceedings of substance on the merits." *Id.*  The Debtors commenced this Adversary Proceeding barely three months ago.  Mr. Salame filed his answer less than two weeks ago.  No substantive proceedings have yet to take place.

22.    Second, the Debtors cannot claim they will suffer prejudice as a result of Ms. Bond's intervention.  Prejudice must be analyzed "in reference to the *delay* caused by intervention, not the effect that the prospective outcome of intervention may have on the non-intervenor's interest." *In re Money Ctr. of Am., Inc.*, 544 B.R. at 115 (citing *Mountain Top*, 72 F.3d at 370) (emphasis in original).  The Debtors can identify no delay or, at best, minimal delay

by allowing Ms. Bond to be heard on question of the Motion to Enforce the TRO, the timing of

the PI Motion or its substance, or by allowing Ms. Bond to participate in the hearing on February

26 hearing.  The Debtors are certainly free to argue that an application to delay the PI Motion is

prejudicial.  That does not amount to prejudice because of Ms. Bond's intervention.

23.     Finally, Ms. Bond had no reason to move to intervene prior to January 31.  Mr.

Salame had legal representation.  Ms. Bond believed her interests and her defenses to be largely

aligned with Mr. Salame's.  Ms. Bond had every expectation that Mr. Salame would make any

necessary application to the Court concerning the family's assets and access to capital.   No

substantive response to the PI Motion or the Motion to Enforce was filed on Mr. Salame's

behalf, so Ms. Bond's interests are now unrepresented.  She seeks to intervene now before the

Court makes any decisions that either have long-term effects or would be expensive to challenge.

**B.      Ms. Bond can intervene under Rule 24(a)(1) because 11 U.S.C. § 1109(b)
provides her an unconditional statutory right to intervene.**

24.      An intervenor satisfies Rule 24(a)(1) when she files a timely motion based on an

unconditional statutory right to intervene.  *In re Money Ctr. of Am., Inc.*, 544 B.R. 107, 112

(Bankr. D. Del. 2016).  Section 1109(b) of Title 11 of the United States Code conveys an

absolute right to any "party in interest" to "raise and [. . .] appear and be heard on any issue in a

case under [Bankruptcy Chapter 11]."  11 U.S.C. § 1109(b).  This applies equally to adversary

proceedings.  *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1231 (3d Cir. 1994); *In re

Money Ctr. of Am., Inc.*, 544 B.R. 107, 112 (Bankr. D. Del. 2016).

25.     In the Third Circuit, "party in interest" provides a broad right to participate in

Chapter 11 cases.  *In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 210 (3d Cir. 2011).  The

definition encompasses anyone "who has a sufficient stake in the proceeding so as to require

representation," *id.*, and "anyone who has a legally protected interest that could be affected by a

bankruptcy proceeding." *Id.* (quoting and adopting *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992)).

26.     Ms. Bond and Mr. Salame's finances are intertwined and have been for years, although they have only been married a short time.  As a consequence, Ms. Bond has an interest in the marital estate, including most, if not all, of Mr. Salame's liquid assets, and most of his properties. *See generally In re Bell-Breslin*, 283 B.R. 834 (Bankr. D. Md. 2002).

27.      Ms. Bond also owns the marital home in Maryland and is listed on the deed. (Bond Decl., ¶ 6).  Although she owns the home, she has no ability to access its equity without the risk that she will be found in violation of the TRO.  Nearly all of her assets, including the ones she brought to the marriage, are impacted by the TRO, will potentially be impacted by any preliminary injunction, and may be permanently at risk in this litigation.

28.     The Debtors also seek to prohibit Ms. Bond from using her own funds to pay legal fees for her own criminal defense.  As such, the Debtors are interfering with Ms. Bond's ability to exercise her Sixth Amendment right to counsel in a criminal action.    *See* U.S. Const. amend. VI; *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006) (holding the Sixth Amendment guarantees a defendant a right to counsel of choice); *United States v. Rankin*, 779 F.2d 956, 958 (3d Cir. 1986) ("Interfering with a defendant's efforts to secure counsel and thereby forcing on him representation by an undesired court-appointed attorney may amount to denial of a constitutional right.").  The Debtors have threatened Ms. Bond's lawyers and frozen the retainers held on her account.  This alone makes her a party in interest, entitled to intervene.

29.     It is worth noting that the Debtors have also made Ms. Bond a centerpiece of the Adversary Proceeding.  In their subpoena to Duane Morris, the Debtors demanded information as to all money paid for a retainer, not just funds from Mr. Salame.  The Debtors have taken

every opportunity to impugn and disparage Ms. Bond in public filings, accusing her of, among other things, running a conspiracy to dissipate or conceal assets and masterminding a plot to hinder and delay these proceedings by any means necessary.  As such, the Debtors cannot now argue that Ms. Bond is not a party in interest.

30.    Ms. Bond has an unconditional statutory right to intervene and made a timely motion to do so.  She should be permitted to intervene as of right under Rule 24(a)(1).

**C.    Ms. Bond can intervene under Rule 24(a)(2) because she has an interest in property that is the subject of this litigation.**

31.    An intervenor satisfies Rule 24(a)(2) by showing: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation. *Mountain Top*, 72 F.3d at 366.

32.    As noted above, Ms. Bond filed a timely motion to intervene and has an interest in the monetary assets and at least some of the real property at issue in this litigation.

1.    *Ms. Bond's interests are impaired and are at risk in this litigation.*

33.    Ms. Bond faces current and ongoing impairment of her interest in the assets and property that are at issue in this litigation.    Ms. Bond is unable to access the equity in her home. Her criminal counsel is unable to draw from the retainer on account for her defense.  She cannot access any of the assets jointly held with Mr. Salame, including the assets she brought to the relationship.  At a meet and confer with Duane Morris, counsel for the Debtors advised that Ms. Bond is not permitted to use her assets for any living expenses.  She will soon be unable to afford to provide for her three children, to maintain their home, or to exercise her Constitutional right to defend herself from criminal charges.

10

      2.     *Ms. Bond's interests are no longer adequately represented by a party to this action.*

34.     Prior to January 31, Mr. Salame had counsel representing his interests and defending the family's assets.  On January 31, Mr. Salame's counsel abdicated their obligation to represent Mr. Salame by effectively defaulting on the PI Motion.  As of this filing, Mr. Salame lacks counsel diligently pursuing his rights and defenses.  He is incarcerated.  His access to resources is limited.  He cannot appear before this Court and plead his case.  He has no ability to advocate for himself or his wife and young family.  Ms. Bond is without adequate representation by any party to this action.

35.     Ms. Bond satisfies all elements to intervene pursuant to Rule 24(a)(2).

## II.    Ms. Bond Should Be Permitted to Intervene Under Rule 24(b) permitting permissive joinder.

36.     If the Court finds that Ms. Bond does not have a statutory right to intervene pursuant to Rule 24(a), she should be permitted to intervene under the permissive joinder rule.

37.     Federal Rule of Civil Procedure 24(b)(1)(B) affords the Court discretion to allow a party to intervene where a non-party "has a claim or defense that shares with the main action a common question of law or fact." Fed. Civ. P. 24(b)(1)(B).  Permissive intervention is the left to the Court's discretion. *In re Money Ctr. of Am., Inc.*, 544 B.R. at 116.

38.     Ms. Bond shares an interest in the assets that are the subject of the TRO and the PI Motion, and which are at risk in this proceeding.   Although she is not a party to this proceeding, the Debtors seek to enjoin her from using assets that she has a legal right to use to provide for her family, maintain her home, and defend her criminal case.   To the extent those funds are joint property with Mr. Salame, Ms. Bond shares an issue that has a common question of law or fact with these proceedings.  Ms. Bond should be permitted to intervene.

## CONCLUSION

39.     The Debtors seek to prevent Ms. Bond from using her assets to provide for her family, to maintain their home, and to fund her criminal defense.  Ms. Bond hoped to rely on Mr. Salame to defend their family.  Mr. Salame's lawyers have abdicated their responsibility to diligently represent him.  Instead of looking out for the fairness of these proceedings, the Debtors seek to press an unfair advantage against a disadvantaged defendant.  Ms. Bond and her children will suffer because of it.  She has a right to participate in the proceedings pursuant to Rules 24(a) and (b) and now moves the Court for permission to do so.  In accordance with Rule 24, Ms. Bond attaches her proposed filing as Exhibit A to the Breslin Declaration.


                                        Respectfully submitted,

Dated:  February 14, 2025               **DUANE MORRIS LLP**
        Wilmington, Delaware

                                        */s/ Sommer L. Ross*
                                        Sommer L. Ross (DE 4598)
                                        1201 N. Market Street, Suite 501
                                        Wilmington, Delaware  19801
                                        Tel: 302-657-4951
                                        Email: SLRoss@duanemorris.com

                                        -and-

                                        Stephen H. Sutro
                                        Spear Tower
                                        One Market Plaza, Suite 2200
                                        San Francisco, CA 94105-1127
                                        Tel: 415-957-3008
                                        Fax: 415-276-9855
                                        Email: shsutro@duanemorris.com
                                        (*pro hac vice pending*)

                                        Eric R. Breslin
                                        200 Campus Drive, Suite 300
                                        Florham Park, NJ 07932-1007
                                        Tel: 973-424-2063

Fax: 973-556-1552
Email: erbreslin@duanemorris.com
(*pro hac vice pending*)

Melissa S. Geller
1540 Broadway
New York, New York 10036
Tel: 212-692-1077
Fax: 973 556 1562
Email: msgeller@duanemorris.com
(*pro hac vice pending*)

*Attorneys for Intervenor Michelle Bond*

13